## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**STACY DAVIS, BECKY VALLEE &**     **CIVIL ACTION**
**JAMES A. BLOCK**

**VERSUS**            **NO: 15-518**

**OMEGA REFINING, LLC; OMEGA**    **SECTION: "S" (5)**
**REFINING, INC.; VERTEX**
**REFINING LA, LLC & STACEY**
**LUCAS**

### ORDER AND REASONS

 **IT IS HEREBY ORDERED** that Stacey Lucas' Motion to Dismiss (Doc. #6) is **DENIED**.

 **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Remand (Doc. #10) is **GRANTED**,

and this matter is **REMANDED** to the Twenty-Fourth Judicial District Court, Parish of Jefferson,

State of Louisiana

### BACKGROUND

 This matter is before the court on plaintiffs' motion to remand.  Plaintiffs argue that this court

lacks diversity subject-matter jurisdiction under 28 U.S.C. § 1332(a) because they and defendant,

Stacey Lucas, are all citizens of Louisiana.  Plaintiffs also argue that this court should decline to

exercise diversity subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28

U.S.C. § 1332(d), because the local controversy exception, 28 U.S.C. § 1332(d)(4), applies.  Also

before the court is a motion to dismiss filed by Lucas. She argues that plaintiffs cannot state a claim

against her, and improperly joined her as a defendant to defeat diversity subject-matter jurisdiction.

Plaintiffs filed this putative class action[1] on January 16, 2015, in the Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana against defendants, Omega Refining, LLC, Omega Refining, Inc. (collectively "Omega"), Vertex Refining LA, LLC, and Lucas, alleging toxic tort claims related to the operation of an oil recycling plant in Marrero, Louisiana.  Omega owned the facility until May 2014, when it sold the facility to Vertex.  Lucas, a Vertex employee, has been the plant manager since August 25, 2014.   Plaintiffs allege that:

> 14. From 2012 to date and continuing, the Facility continuously failed to prevent frequent, foreseeable, and preventable breakdowns, and along with the improper functioning of refinery equipment, violated its hourly permit emission limits for Hydrochloric Acid (HCL), Nitrogen Oxide/Dioxide ($NO_x$), Sulfur Dioxide ($SO_2$) and Hydrogen Sulfide ($H_2S$).

> 15. The Facility concealed and misrepresented information to the Louisiana Department of Environmental Quality when submitting "Notice of Unauthorized Discharge" documents.

> 16. The Facility neglected to disclose a new un-permitted point-source altogether – inevitably resulting in the direct emissions of harmful pollutants without any measure of protection for the surrounding community.

> 17. During all relevant times, the Facility caused the unpermitted discharge of chemicals onto its land and inside the Facility, as well as the property and water near the Jefferson Parish water works intake system.   Upon information and belief these

---

[1]  Plaintiffs seek to represent a class of:

> those persons similarly situated, who resided, worked, and/or regularly attended institutions, including but not limited to schools, within Jefferson and Orleans Parish which were within sufficient proximity to the facility owned or operated by Defendants, located in Jefferson Parish at 500 River Road, Marrero, Louisiana, who have sustained damages as a direct consequence from Defendants' negligent, reckless, and intentional emission of noxious and harmful air pollutants.

improper discharges and spills were not reported to the proper[]
authorities as required by Louisiana law.

Plaintiffs also allege specific acts and omissions that occurred from 2012 through 2014 and the present day.  As to Lucas, plaintiffs allege that as "the plant manager, [she] had a duty to prevent the release and ultimate exposure of the plaintiffs."

On February 18, 2015, defendants removed this action to the United States District Court for the Eastern District of Louisiana alleging diversity subject-matter jurisdiction under § 1332(a), and CAFA, § 1332(d).  Defendants contend that Omega and Vertex have diverse citizenship from that of plaintiffs, and that Lucas' Louisiana citizenship should be disregarded because she was improperly joined to defeat diversity subject-matter jurisdiction.  They also contend that the requirements of CAFA are satisfied.

Plaintiffs filed a motion to remand this action to the Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana, arguing that Lucas was not improperly joined and that the local controversy exception to CAFA applies.  Defendants filed a motion to dismiss arguing that plaintiffs cannot sustain a claim against Lucas under Louisiana law, and thus, she was improperly joined and plaintiffs' claims against her should be dismissed.

## ANALYSIS

**A.   Remand Standard**

Motions to remand to state court are governed by 28 U.S.C. 1447(c), which provides that "[i]f at any time before the final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded."   The removing defendant bears the burden of demonstrating that federal jurisdiction exists and therefore that removal was proper.  Jernigan v. Ashland Oil, Inc., 989 F.2d 812, 815 (5th Cir. 1993).

In assessing whether removal is appropriate, the court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed. See Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002). Doubts regarding whether federal jurisdiction is proper should be resolved against federal jurisdiction. Acuna v. Brown & Root, 200 F.3d 335, 339 (5th Cir. 2000).

**B.    Diversity Subject-Matter Jurisdiction under § 1332(a)**

Defendants removed this action alleging that this court has diversity subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1), which provides that district courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and are between citizens of different States.  Defendants contend that plaintiffs are all Louisiana citizens, and the properly joined defendants, Omega and Vertex, are not.  They argue that Lucas, who is a Louisiana citizen, was improperly joined to defeat diversity subject-matter jurisdiction.

**a.  Improper Joinder**

Defendants argue that Lucas' citizenship should be disregarded for the purposes of establishing subject-matter jurisdiction because plaintiffs cannot maintain a claim against her under Louisiana law, and she is improperly joined.  Lucas also argues that plaintiffs' claims against her should be dismissed for those same reasons.

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the allegedly improperly joined party in state court. Smallwood v. Ill. Cent. R.R., 385 F.3d 568, 573 (5th Cir. 2004) (en banc). The United States Court of Appeals for the Fifth Circuit has stated:

> The test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.
>
> \*   \*   \*
>
> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.  Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder.  That said, there are cases, . . ., in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder.  In which cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

Id. (citations omitted).  Further, the United States Court of Appeals for the Fifth Circuit cautioned "that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." Id. at 573-74.

**b.  Rule 12(b)(6) Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, enough facts to state a claim for relief that is plausible on its face must be pleaded. In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n. 14 (2007)).  A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl., 127 S.Ct. at

1965.  The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008).  However, the court need not accept legal conclusions couched as factual allegations as true. Iqbal, 129 S.Ct. at 1949-50.  In considering a motion to dismiss for failure to state a claim, a district court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).  However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Id. at 498-99 (internal citations omitted).

### c. Plaintiffs' Cause of Action Against Lucas

The sole issue for determining whether Lucas is improperly joined is whether plaintiffs are able to establish a cause of action against her in Louisiana state court.   In Canter v. Koehring Co., 283 So.2d 716, 722 (La. 1973), the Supreme Court of Louisiana stated as follows:

> The failure to act as required by the employment duty may deprive the third person of a protection owed him by the principal or employer, and such risk of harm because of the breach may have been reasonably foreseeable.  Thus, the breach of the duty imposed by the employment or agency relationship may, under general tort principles, be actionable negligence because of the creation or maintenance thereby of an undue risk of harm to others.

(citations omitted).

An employee is liable to a third-person damaged by reason of the breach of an employment-imposed duty under the following circumstances:

> 1) The principal or employer owes a duty of care to the third person, . . . breach of which has caused the damage for which recovery is sought.

2) This duty is delegated by the principal or employer to the defendant.

3) The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances – whether such failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.

4) With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages.   If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.

Id. at 721.  Applying the Canter factors to a suit involving claims against a plant manager stemming from an explosion at a fertilizer plant, the United States Court of Appeals for the Fifth Circuit stated the plant manager's liability depends on the factual issues of (1) whether she delegated with due care the responsibility of safe maintenance and operation; and, (2) whether she was aware or should have been aware of a risk of harm and nevertheless failed to respond to the risk in the manner in which a reasonably prudent plant manager would respond in the same or similar circumstances. Ford v. Elsbury, 32 F.3d 931, 936 (5th Cir. 1994).  Further, "[a] supervisor's knowledge of the dangers present could give rise to the personal duty contemplated in Canter." Id. (quotation omitted).

Defendants argue that Lucas' uncontroverted deposition testimony establishes that she is not personally liable to plaintiffs under Canter.  Lucas testified that she was a liaison for the plant with

the Louisiana Department of Environmental Quality and coordinated communications between departments at the plant. She does not have direct, sole control over any area of the plant, but rather facilitates decision making at the plant that involves more than one manager. They also argue that plaintiffs have not identified any specific events for which Lucas could be responsible for injuries to them. Further, Lucas testified that she was not responsible for inspecting, maintaining, repairing, or operating any equipment in the plant and that those jobs were performed by different departments that she believed were headed by competent individuals. In sum, defendants argue that there is no evidence that there was an issue that Lucas had a duty to correct and failed to do so that caused plaintiffs' alleged damages. See, Doc. #26, p. 12-14.

Plaintiffs argue that they have stated a cause of action against Lucas and have a reasonable chance of recovering against her because as the plant manager, she knowingly allowed the emissions of noxious chemicals and odors into the surrounding communities, and she was designated by Vertex as the "Responsible Official" with authority to sign forms submitted to the Louisiana Department of Environmental Quality.

At this stage of the litigation, the court cannot definitively determine that plaintiffs cannot sustain a cause of action against Lucas. The only discovery thus far conducted that is pertinent to this decision is Lucas' deposition. Plaintiffs have not yet had the opportunity to depose other plant employees, Vertex corporate management personnel, or representatives of the Louisiaana Department of Environmental Quality, or other individuals, who might have knowledge pertenent to Lucas' potential liability. Because dismissing Lucas at this stage is akin to granting a motion for summary judgment, and there had been insufficient factual development to conclude that plaintiffs cannot sustain a claim against her, Lucas' motion to dismiss is DENIED.

**C.     Diversity Subject-matter Jurisdiction under CAFA, § 1332(d)**

In their Notice of Removal, defendants allege that this court has diversity subject-matter jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).  Plaintiffs agree that this court has subject-matter jurisdiction under CAFA, but argue that this court should apply the local controversy exception to CAFA, 28 U.S.C. § 1332(d)(4), and decline to exercise such jurisdiction.

CAFA is an extension of diversity subject-matter jurisdiction.  In re Burlington N. Santa Fe Ry., 606 F.3d 379, 381 (7th Cir. 2010).  CAFA provides that the district court has diversity subject-matter jurisdiction over a "class action"[2] in which there are more than 100 putative class members, the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and at least one class member is a citizen of a different state than one or more defendants.  28 U.S.C. § 1332(d)(2). Sections 1332(d)(4), the local controversy exception, mandates that the court decline to exercise jurisdiction under certain circumstances.

Specifically, § 1332(d)(4) provides:

> A district court shall decline to exercise jurisdiction under paragraph (2)--
>
> > (A)(i) over a class action in which–
> >
> > > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> > >
> > > (II) at least 1 defendant is a defendant–
> > >
> > > > (aa) from whom significant relief is sought by members of the plaintiff class;

---

[2]  A "class action" is defined as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." Id. at § 1332(d)(1)(B).

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.[3]

Id. at § 1332(d)(4).  The plaintiffs bear the burden of establishing that the local controversy exception applies. Opelousas Gen. Hosp. Auth. v. Fairpay Solutions, Inc., 655 F.3d 358, 360 (5th Cir. 2011) (citations omitted).  "[T]he exception is intended to be narrow, with all doubts resolved in favor of exercising jurisdiction over the case." Id. (quotations omitted).

This action was originally filed in Louisiana. It is undisputed that greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of Louisiana, that the principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in Louisiana, and that no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons during the last three years. See id. at §§ 1332(d)(4)(A)(i)(I), 1332(d)(4)(A)(i)(III) and 1332(d)(4)(A)(ii).  The

---

[3] Plaintiffs concede that subparagraph (B) is inapplicable.

parties dispute whether there is at least one defendant that is a citizen of Louisiana from whom significant relief is sought whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class. See id. at §§ 1332(d)(4)(A)(i)(II).

The parties agree that Lucas and Vertex are both Louisiana citizens for the purposes of § 1332(d)(4)(A)(i)(II).  Section 1332(d)(10) provides that, for the purposes of the local controversy exception, an unincorporated association, such as a limited liability company, is "deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  In the Notice of Removal, defendants state that Vertex  "is a domestic limited liability company organized under the laws of Louisiana," and that Lucas is "domiciled in St. Tammany Parish and is a citizen of the State of Louisiana."

Plaintiffs argue Lucas and Vertex are both Louisiana defendants that fit the requirements of § 1332(d)(4)(A)(i)(II). They contend that Vertex, and Lucas, as the plant manager during Vertex's ownership of the facility, are responsible for the chemical releases upon which they have sued. Thus, plaintiffs' seek significant relief from these defendants whose conduct forms a significant basis for the claims asserted.

Defendants argue that Lucas and Vertex do not fit the requirements of § 1332(d)(4)(A)(i)(II). Defendants argue that Vertex does not fit the local controversy exception because Omega owned the plant during most of the time encompassed by the complaint. Plaintiffs alleged that "[f]rom 2012 to date and continuing, the Facility continuously failed to prevent frequent, foreseeable, and preventable breakdowns, and along with the improper functioning of refinery equipment, violated its hourly permit emission limits for [certain chemicals]." Defendants point out that Vertex bought the refinery in May 2014, and plaintiffs filed suit on January 16, 2015.  They argue that Vertex's

conduct in the relatively short time cannot form a significant basis for plaintiffs' claims because plaintiffs allege multiple releases of different types of toxic chemicals in different forms over the years, and Omega owned the refinery for most of that time.

In Opelousas Gen. Hosp. Auth., 655 F.3d at 361, the United States Court of Appeals for the Fifth Circuit explained that the local defendant's conduct is compared to the other defendants' conduct:

> The plain text of 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb) relates to the alleged conduct of the local defendant, on one hand, to all the claims asserted in the action, on the other. The provision does not require that the local defendant's alleged conduct form a basis of each claim asserted; it requires the alleged conduct to form a significant basis of all the claims asserted.

A definitive analysis of the measure of damages caused by each defendant is not required, but plaintiffs must provide sufficiently detailed allegations or extrinsic evidence detailing the local defendant's conduct in relation to the out-of-state defendants. Id. at 363.

Plaintiffs allege various specific acts and omissions that occurred from 2012 to 2014. Many of the allegations are general and apply to the entire time encompassed in the petition, 2012 through the present. However, some are assigned specific dates. The following actions are alleged to have occurred before Vertex purchased the facility:

> Excess of emissions of HCL, $NO_x$, $SO_2$, and $H_2S$ resulting from an increase in throughput from 2012 to April 2014.
>
> *       *       *
>
> In 2013, approximately 48 hours of scrubber operations where pH values were outside those allowed by its permit.
>
> In 2012, approximately 752 hours of scrubber operations where pH values were outside those allowed by its permit.

Failure to submit semiannual reports describing excess emissions and other details related to the periods of non-compliance for 2012 and 2013.

\*       \*       \*

Failure to report the correct throughput in permit applications or correct the applications from 2012 to April 2014 for the Process Heater with Wet Scrubber.

Failure to submit an accurate process flow diagram or correct such submittal upon becoming aware of the inaccurate process flow diagram in permit applications from 2012 to April 2014.

The following action is alleged to have occurred while Vertex owned the facility:

In 2014, approximately 46 hours of scrubber operations where pH values were outside those allowed by its permit.

Subparagraphs 18(g) through 18(k) list numerous "incidents" of failures to report certain conditions or provide specific information.  There are no dates assigned to any of the "incidents" to evaluate whether that conduct is attributable to Vertex.

Considering the allegations as a whole, it cannot be said that plaintiffs do not seek significant relief from Vertex.  They allege that the facility continues to release chemicals that harm them. Omega owned the facility for two years and about four months encompassed by the complaint, 2012 to May 2015.  Vertex has owned the facility for a little over a year.  The complaint encompasses current and future events that may have occurred during Vertex's ownership of the facility.  The parties have not conducted any discovery pertinent to Vertex's alleged liability, and the comparative durations of ownership do not so greatly favor Omega as to conclude at this juncture that plaintiffs do not seek significant recovery from Vertex.  Therefore, this court will apply the local controvert

exception to CAFA and decline to exercise subject-matter jurisdiction. Plaintiffs' motion to remand is GRANTED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Stacey Lucas' Motion to Dismiss (Doc. #6) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Remand (Doc. #10) is **GRANTED**, and this matter is **REMANDED** to the Twenty-Fourth Judicial District Court, Parish of Jefferson, State of Louisiana.

New Orleans, Louisiana, this   11th day of June, 2015.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**